SAMUEL D. HAVELY, Plaintiff in Error, *v.* FRANCIS H. LOWRY, Defendant in Error.

ERROR TO PIATT.

To render a levy on personal property complete, the officer must do some act, which, if not protected by his writ, would amount to a trespass. If a delivery bond is not executed, he must, to affect the rights of third persons, take the property into his possession.

It is not a sufficient levy of an execution on personal property, for the officer to indorse a levy with inventory of the property on the execution, in the presence of the judgment debtor, while the property is before them.

THIS was an action of trover, commenced in the Piatt Circuit Court, to the September term, 1861, against the said plaintiff in error, and one John Gatewood. The declaration is in the usual form, alleging that the plaintiff was "lawfully possessed as of his own property, of certain hogs and wagons, goods and chattels, to wit, two hundred hogs and six wagons of great value, to wit, of the value of seven hundred dollars, and be-

ing so possessed, etc.; and a second count, setting up property in defendant in error as sheriff, etc. The defendants pleaded not guilty. The cause came on to be heard at the March term, 1862, upon the following agreed state of facts:

It is agreed by the parties, that on the 24th day of January, 1861, the sheriff of Piatt county, who is the plaintiff in this suit, received an execution in favor of Scott Armsworth, against John Gatewood, for $560.60, and costs, from the Piatt Circuit Court, dated January 24, 1861. That on the 5th day of March, 1861, the plaintiff levied the said execution on one hundred head of hogs and three wagons, as the property of John Gatewood; that the plaintiff found the said hogs and wagons on the farm of said Gatewood, in his possession; that Gatewood was present when the levy was made, and that he afterwards informed Havely of the levy; that within two or three days after the levy was made, Havely took and drove off the hogs to Macon county, and also took off the wagons; that the plaintiff afterwards demanded the property of both Gatewood and Havely, and they refused to give it up, but that Havely converted it to his use; that the value of the property levied on and taken away by Havely, was two hundred and twenty-five dollars; that half of the hogs were born from sows mortgaged after the execution of the mortgage hereinafter mentioned by Gatewood to Ayers.

It is further agreed, that on the 15th day of November, 1859, John Gatewood made a chattel mortgage to Stephen D. Ayers, a copy of which is to go in as evidence in this case, a copy of which is hereto attached, marked A., and made a part of this bill of exceptions; that nothing was paid by Gatewood on said mortgage; that the property remained in the possession of Gatewood after the first note was due, October 1, 1860, and default made in the payment of it, and on until the 28th day of February, 1861; that all the property on the farm of John Gatewood having been duly advertised under said mortgage, was sold on the 28th day of February, 1861, including the hogs and wagons levied on by the plaintiff, and under said mortgage that Samuel Havely, the defendant, purchased the said hogs and wagons at said mortgage sale, and

left the same on the farm of John Gatewood where it had all the time been, and made an agreement with one James Thorn to keep said property until called for by him (Havely); said Thorn was then living with said Gatewood, and had been there all winter. That he was talking of renting Gatewood's farm, but writings had not been drawn or signed by the parties for that purpose; that Havely admitted that he knew that the said property had been levied on by plaintiff before the same was taken by him (Havely) away from Gatewood. This admission was made to the plaintiff by Havely.

It is further agreed, that the plaintiff went on the farm of John Gatewood late in the afternoon of the 5th of March, 1861; that said hogs and wagons were then in the lots of said Gatewood, and the plaintiff indorsed the levy on the execution with an inventory of the property; that no delivery bond was taken that night; that Gatewood agreed that the property might remain in the said lots over night, and that no harm should come to it; that the roads were very bad and the river high at the time—which was all that was done to constitute the levy referred to; that the property was taken by Havely within two or three days after levy was made, and before plaintiff returned to Gatewood's; that Gatewood informed Havely that the said hogs and wagons had been levied on, and was present when Havely took them away; which was all the evidence in the case.

The chattel mortgage was substantially as follows:

Chattel mortgage executed by John Gatewood to S. D. Ayers, November 15, 1859. Consideration, $4,000. Conveys eleven head of horses, two of them stallions, twelve cows, fifteen head of young cattle, one hundred head of hogs, " together with all the increase that may arise or be produced from or by the said horses, mares, cattle and hogs, as well as all of the horses, cattle and hogs that I (Gatewood) may purchase and bring on my farm on which I reside; also I desire and include all of wheat, oats and corn that I may raise on the farm now occupied by me in the years 1860 and 1861. The said Ayers agreeing that the aforesaid stock may be kept out of the grain thus raised in the years aforesaid. One four-

horse wagon, three two-horse wagons, one buggy, one Manny reaper, six double plows, four single plows, and the corn now on my place."

Condition of mortgage : That Gatewood pay $2,000 October 1, 1860, $1,000 April 1, 1861, and $1,000 October 1, 1861. And further that Gatewood is to retain possession of the property until default in payment, and upon default or other stipulation violated, to deliver up the property to Ayers.

"And provided also, that if default in payment as aforesaid shall be made in either of said notes at maturity, or if any part of said property shall be in danger of being levied upon by executions, or be in danger of being removed by the said party of the first part, or by any other person, in that event each note shall be considered due. That then the said Stephen D. Ayers, or his attorney, agent or assigns, heirs, executors or administrators, shall take possession of such goods and chattels, and sell the same at public sale to the highest bidder for cash in hand, after giving at least ten days' notice," etc., to make the debt and cost, etc.

The court gave judgment for the plaintiff for $225, and the defendant brings the case to this court by writ of error.

TUPPER & NELSON, for Plaintiff in Error.

The court below erred in rendering judgment against the plaintiff in error, and in favor of defendant in error.

1. The plaintiff in error derived a good title to the property in question from the sale under the chattel mortgage. 11 Ill. 618 ; 24 Ill. 645—647 ; 26 Ill. 368.

2. The defendant in error, as sheriff, never acquired any interest in the property on account of the insufficiency of his levy. He never had the property in possession, or under his control. 25 Ill. 346.

W. E. LODGE, for Defendant in Error.

Property acquired after the execution of a chattel mortgage, is not held by it. *Hunt* v. *Bullock*, 23 Ill. 320.

The mortgage from Gatewood to Ayres, under which plain-

tiff claims title, became absolute on the first day of October, 1860. No attempt was· made to reduce the property to possession for several months. The execution lien attached before any such attempt was made; hence the mortgage became fraudulent as to creditors, and a sale under it did not affect the lien of the execution. *Cass* v. *Perkins*, 23 Ill. 382.

The levy in this case was sufficient. . The fact that Lowry left the property with Gatewood for a short time does not affect his right to recover. *Williams* v. *Herndon*, 12 B. Monroe, 484; 1 Spencer, 56.

If goods are present, within the officer's control, and he makes known his intention to levy, and takes an inventory, it is sufficient. *Trotter, etc.* v. *Henry*, 16 Johns. 288.

If the officer go on the premises and assert his right to the property, by virtue of the execution, he will be liable as a trespasser without the protection of the writ. *Westervelt* v. *Pinckney*, 14 Wend. 123.

He need not take actual possession, or remove the property. *Hartwell et al.* v. *Bissell*, 17 Johns. 128.

A return of a levy will subject the officer to an action of trespass; actual touching or removal is not essential. 1 Hilliard on Torts, 89; *Neff* v. *Thompson & Ide*, 8 Barb. 513.

WALKER, J. As we view this case, it is deemed unnecessary to examine whether the mortgage showed on its face that it was fraudulent, as to third persons. It is only necessary to determine whether there was a legal levy on the property in controversy, by the sheriff. If the levy was insufficient, there can be no pretense that the sheriff has a right to maintain this action, as he relies on no other title to the property.

To render a levy on personal property complete, the officer must perform some act, which not only indicates an intention to seize the property, but he must reduce it to possession, or at least, bring it within his immediate control. He must do some act, which if not protected by his writ, would render him a trespasser. If a delivery bond is not executed, he must, to affect the rights of third persons, take the property

into his possession, so as to notify the world that the levy has been made. *Minor* v. *Herriford*, 25 Ill. 344.

Testing this case by this rule, there was not a sufficient levy on the property in controversy. The defendant in error did not reduce the property to possession, or exercise any control over it. He only saw it in the enclosure of the defendant in execution, and did not remove it, but simply left it where it was found. The only act he did, and which is claimed to be a levy, was to write the inventory on the execution, and then notify the defendant in execution of the fact. He made no change of its possession, by placing a custodian over it, or removing it from the premises. It was at most a mere pen and ink levy, and was wholly insufficient to affect the rights of third persons. He might as well have made the indorsement at home, and sent word to the defendant informing him of what he had done. It would have been no less binding.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*