Davidson v. Waldron et al.

## JAMES W. DAVIDSON
### v.
## ZACHARIAH K. WALDRON *et al.*

1. TROVER— *title of plaintiff.* In an action of trover and conversion, as in an action of ejectment, the plaintiff must recover on the strength of his own title, without regard to the weakness of that of his adversary.

2. Trover is a possessory action, and the plaintiff must show that he has either a special or a general property in the thing converted, and the right to its possession.

3. A valid levy of an execution upon personalty, will give the officer such a property and right of possession therein as will enable him to maintain an action of trover.

4. LEVY— *what constitutes — duty of officer.* To constitute a valid levy upon personal property, it must be within the power and control of the officer when the levy is made, and he must take it into his possession within a reasonable time thereafter, and in such an open, public and unequivocal manner, as to

---

Davidson *v.* Waldron et al.

apprise everybody that it has been taken in execution. He must so deal with the property, in order to constitute a good levy, as, without the protection of the execution, his acts would make him a trespasser.

5. A levy should be indorsed upon the execution, and the indorsement should show that the levy was made within the life of the writ; and it should be distinct and specific.

6. Where the species of property is such that actual possession of it cannot be taken, as a growing crop, it would be prudential in the officer to call some one or more of the neighborhood, to witness that he had taken it in execution, and he should indorse the fact on the writ.

7. So, as in this case, where an officer has levied upon a large lot of lumber, he may be justified in suffering it to remain where he found it. But he should exercise some act over it, such as would make him, without the protection of the writ, a trespasser. Some public, open, unequivocal act should be done that would lead all persons to know that the property was no longer in the custody of its former owner, but in that of the law.

8. An indorsement upon an execution made after the return day, that it had been theretofore "levied on 175,000 feet of lumber, at Arlington," is insufficient. The statement of the levy is too indefinite and uncertain to give the officer a right of possession or property in the lumber. It does not show when it was levied, whether in the lifetime of the writ, or after it had expired, nor upon what lumber, or kind or description, so that others interested may be notified of a change of possession by means of a levy.

9. The law will not sustain a levy which is only colorable, and designed to shield the property from the claims of other parties.

10. Nor can a levy create a lien separate from the possession of the property levied upon.

11. If a creditor seize the goods of a debtor under an execution, and suffers them to remain in the possession of the debtor, for an unreasonable time, the execution will be deemed fraudulent and void, as against a subsequent execution.

12. But the delay in taking possession of the property, to have that effect, must be shown to have been by the consent of the creditor, either expressly or impliedly given.

13. SHERIFF — *neglect to make levy.* If the officer, in whose hands an execution is placed, shall, without the consent of the creditor, so delay making a proper levy, that the rights of third parties intervene, the creditor has his remedy against the officer.

14. CONFLICT OF JURISDICTION — *State and Federal Courts.* In an action of trover brought in a State court by a United States marshal to recover the possession of personal property which he claims by virtue of a levy made by him under an execution issued out of a Circuit Court of the United States, it is competent for the State court to decide upon the validity of such levy.

15. So in ejectment brought in a State court, where a party claims title by virtue of a sale of the premises under an execution issued out of the District or Circuit Court of the United States, the validity of the execution, and of the proceedings under it, are a fair subject of investigation and adjudication by the State court.

16. GROWING CROP — *rights of purchaser under execution.* A purchaser of a growing crop, under execution, has a right to enter upon the premises to gather the crop.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was an action of trover, brought by James W. Davidson against Francis B. Cooley, Elisha S. Wadsworth, John V. Farwell, Zachariah K. Waldron, Marshall Field, and Charles W. Wilcox, to recover for certain lumber, boards, scantling, planks and lath, of the value of $1,200, of which the plaintiff alleged he was lawfully possessed on a day prior to the commencement of the suit, and which, on that day, he casually lost out of his possession, and that they came into the possession of the defendants, by finding, the defendants knowing the same to be the plaintiff's property, but contriving and intending to injure the plaintiff, refused to deliver the same to him, although often requested so to do, but converted and disposed of the same to their own use, to the plaintiff's damage of $1,200.

The defendants pleaded, *first,* not guilty; and *second,* a special plea, setting up that George C. Wilder recovered two certain judgments in the Circuit Court of Cook county, for certain specified amounts, against one John C. Gibson; and that the defendants, Cooley, Wadsworth and Farwell, had also recovered a certain judgment against said Gibson, in the Cook County Court of Common Pleas; that executions having been issued upon said judgments, and coming to the hands of said defendant Waldron, as sheriff of Bureau county, were by him levied upon the lumber, boards, plank, scantling and lath mentioned in the plaintiff's declaration, as the property of the said John C. Gibson; that by virtue of the said levies, and the liens acquired by means thereof, the said

sheriff advertised and sold the property mentioned, to satisfy said judgments; that at the time of making said levies, the said John O. Gibson was in possession of, and engaged in selling and disposing of said lumber, boards, etc., in his customary and usual manner, at Arlington, in said Bureau county, and had been in possession of, and so engaged, for a long time prior to said levies; that the lumber, etc., was liable to be so levied on and sold under said writs to satisfy said judgments, to which the proceeds were properly applied; that said Cooley, Wadsworth and Farwell, and said defendants, Field and Wilcox, as their agents, directed said sheriff to so levy on and take said lumber, etc., under said writs, which were the same trespasses complained of in the declaration. That after the levies were made, said Field and Wilcox acted under the direction of said sheriff, and as his clerks in the sale of the property.

The replication to the special plea denied the recovery of the judgments mentioned therein, and averred that at the times when, etc., in the plea mentioned, said Gibson was not in possession of said property, and that the same was not liable to be levied on and sold as stated in the plea.

The issues were tried before the court, by agreement, without the intervention of a jury.

The plaintiff, Davidson, based his claim to a right of recovery in the action, upon a special property and right of possession in the lumber, which he claimed to have acquired by virtue of a levy previously made thereon by him as United States marshal, through his deputy, Matthews, under a writ of *fieri facias,* which was issued out of the Circuit Court of the United States for the Northern District of Illinois, upon a judgment rendered therein in favor of David B. Jewett against the said Gibson.

The principal question presented by the record, touching the right of the plaintiff below to recover, arises out of the alleged invalidity, as insisted upon by the defendants, of the levy claimed to have been made upon the property by the marshal, Davidson.

The evidence having reference to the character of that levy, is sufficiently set out in the opinion of the Court.

Another question arises in the case, as to the power of the State court to inquire into, and decide upon the validity of a levy of an execution which was issued out of a Circuit Court of the United States.

The finding and judgment in the court below, were in favor of the defendants; upon which the plaintiff, Davidson, prosecuted this writ of error.

Messrs. E. S. SMITH, and E. A. STORRS, for the plaintiff in error.

*First.* The property levied upon by the plaintiff in error, as United States marshal, was in the custody of the law, and was not liable to be taken by another execution in the hands of a different officer, acting under another jurisdiction. And herein —

1. The property was in the custody of the law. *Taylor* v. *Caryl,* 20 How. U. S. 595 ; *Ludden* v. *Leavitt,* 9 Mass. 104 ; *Brashear* v. *West,* 7 Peters, 608.

2. The property thus levied upon by the plaintiff in error, was not liable to be taken on another execution in the hands of a different officer, acting under another jurisdiction. *Hagan* v. *Lucas,* 10 Peters, 400 ; *Peck* v. *Jenness,* 7 How. U. S. 612 ; *Taylor* v. *Caryl,* 20 How. U. S. 583 ; *Freeman* v. *Howe,* 24 How. U. S. 455—459 ; *Brown* v. *Clarke,* 4 How. U. S. 4 ; *The Oliver Jordan,* 2 Curtis, 415 ; *Ex parte Robinson,* 6 McLean, 356 ; *Pulian* v. *Osborn,* 17 How. U. S. 474 ; *United States* v. *Booth,* 21 How. 507.

3. The general rule is settled, beyond all controversy, that State courts cannot enjoin nor interfere with proceedings in the United States courts ; nor the latter in the former courts. Act of Congress, March 2, 1793, ch. 22, sec. 5 ; Story's Eq. Jurisp., vol. 2, p. 241, sec. 900 ; Story on the Const., secs. 1757—1759 ; Kent's Commentaries, vol. 1, page 412 ; *Diggs* v. *Wolcott,* 4 Cranch, 179 ; *Kittridge* v. *Emerson,* 13 New Hamp. 227 ; *McKim* v. *Voorhies,* 7 Cranch, 279 ; *Cruik-*

*shanks* v. *Robarts*, 6 Madd. 104 ; *Mead* v. *Merritt*, 2 Paige, 404, 405 ; *Bicknell* v. *Field*, 8 Paige, 440 ; *United States* v. *French*, 1 Gall. 1 ; *Phelan* v. *Smith*, 8 Cal. 520 ; *City Bank of N. Y.* v. *Skelton*, 2 Blatch. C. C. 14 ; *Ex parte Cabrera*, 1 Wash. C. C. 232 ; *Dudley's Case*, 1 Penn. Law Jour. 302 ; *Osborn* v. *Bank of U. S.*, 9 Wheat. 738.

4. The word "proceedings" as used in the above rule, includes the sale of a sheriff under an execution, as also the levy made by him upon property by virtue of the execution. *Wayman* v. *Southard*, 10 Wheat. 1 ; *Duncan* v. *Dart*, 1 How. 304 ; *Beers* v. *Haughton*, 9 Pet. 329 ; *United States* v. *Knight*, 14 Pet. 329 ; *Amis* v. *Smith*, 16 Pet. 312.

5. This rule is founded not only upon comity, but upon public necessity. *Freeman* v. *How*, 24 How. 455—459 ; *Mead* v. *Merritt*, 2 Paige, 404 ; *Peck* v. *Jenness*, 7 How. 625.

6. The fact that the plaintiff in error, in this case, sought to enforce the rights secured by his levy in the State court, cannot affect the application of this rule. Having made the first levy, the State courts cannot inquire into its regularity or validity, but must remit those questions to the tribunal from which the process issued, and could, with no greater propriety, defeat an attempt to assert such right on the ground that the execution was dormant, than it could enjoin the marshal from proceeding to sell under such an execution for the same reason.

*Second.* The execution held by the marshal, and by virtue of which he levied upon the property of Gibson, was not, by reason of the delay in selling the property thus levied upon, dormant as to these defendants, nor as to any other creditors of Gibson. And herein —

1. The question as to whether an execution is, or is not, dormant, is one of intent ; and it must appear that the plaintiffs in the execution, intended by it to hinder, delay, or defraud other creditors, and that it was levied to cover the goods merely, or create a lien separate from the possession. *Seanty* v. *Worthington*, 4 Rawle, 155 ; *Matthews* v. *Warne*, 6 Halst. 310 ; Bac. Abr., Fraud "A" ; *Bradley* v. *Windham*, 1 Wills, 44.

2. And hence it is that this fraudulent[*] intent must be established by some act of the plaintiffs in the execution. A delay in making sale is merely evidence of an intent to cover the property, when such delay proceeds from the directions of, or is caused by, the plaintiffs' interference with the officer in the execution of the writ. *Herkimer County Bank* v. *Brown,* 6 Hill, 232 ; *Russell* v. *Gibbs,* 5 Cowen, 390 ; *Butler* v. *Maynard,* 11 Wend. 552 ; *Rew* v. *Barber,* 3 Cowen, 279 ; *Benjamin* v. *Smith,* 12 Wend. 404 ; *Brown's Appeal,* 26 Penn. State, 402 ; *Doe* v. *Ingersoll,* 11 Smedes & M. 250 ; *Houston* v. *Sutton,* 3 Harring. 37 ; *Hickman* v. *Hickman,* 4 Harring. 484 ; *Cumberland Bank* v. *Hanx,* 4 Harr. (N. J.) 168 ; *Power* v. *Van Buren,* 7 Cow. 560 ; *Paton* v. *Westervelt,* 13 N. Y. Leg. Obs. 7 ; *Ethridge* v. *Edwards,* 1 Swan, 426 ; *Cox* v. *McDougal,* 2 Yeates, 434.

3. In this case the delay in making sale proceeded from no act or directions of the plaintiffs in the execution. The delay, therefore, not proceeding from any act of the plaintiffs, nor with their knowledge, no presumption could be indulged in against them.

4. All presumptions of fraudulent intent or purpose upon the part of the plaintiffs in the execution, are met and overthrown by the facts in the case. At least $14,000 worth of personal property was left exposed to any other process, and which was not levied upon by the plaintiff in error. There could have been no intent to *cover* the property of the debtor, for but a small portion of it was levied upon.

5. The lumber levied upon was left in the custody of a third person, appointed by the marshal. The acts of the custodian in permitting the defendant in the execution to interfere with the property, could neither affect the rights of the marshal, nor the plaintiffs in the execution. He would simply make himself liable to them in damages.

Mr. C. M. HAWLEY, for the defendants in error.

In trover, the plaintiff's right to recover depends upon the strength of his own title, and not upon the weakness of his

adversary. In this action, property in another is a good plea. *Duncan* v. *Spear*, 11 Wend. 54.

To sustain this action, Davidson, the plaintiff, should have shown a valid judgment against John C. Gibson, a levy, and a continual possession of the property levied upon. *Earl* v. *Camp*, 16 Wend. 565; *Clarke* v. *Clarke*, 6 Esp. R. 61; Croker's Sheriff, sec. 811.

The plaintiff cannot claim and maintain special property, as marshal of the United States for the Northern District of Illinois, by virtue of a judgment, execution and levy, without showing his authority, and that he was duly appointed and qualified. 2 U. S. Statutes, p. 372, sec. 1; *Fightmaster* v. *Beasley*, 7 J. J. Marsh. 419; *Schermerhorn* v. *Van Valkenburgh*, 11 Johns. 529.

H. M. Matthews was neither marshal, nor deputy marshal; nor did he pretend to be; nor was he deputy marshal *de facto*. To constitute a person an officer *de facto*, a mere claim to being a public officer is not sufficient; there must be some color of right to the office, or an acquiescence on the part of the public for such a length of time as will authorize the presumption of at least a colorable election or appointment. *Wilcox* v. *Smith*, 5 Wend. 231; 1 Greenleaf Ev., p. 106, sec. 83.

Matthews was as tranger: no one knew him or had heard of him as deputy U. S. marshal. An under sheriff or deputy, being recognized by statute as a public officer, it will be sufficient, *prima facie*, to show that he acted publicly and notoriously in that character. But if he was only a private agent or servant of the sheriff, other proof is necessary. 2 Greenlf. Ev., sec. 582.

The levy was invalid for several reasons: 1st, Matthews never indorsed any levy; 2nd, the indorsement made does not show when the levy was made, not even that it was made in the life of the execution, nor upon what particular lumber it was made; 3rd, it appears that the indorsement of the levy was made by Davidson himself, *after* the life of the execution, and after he went out of office, if, indeed, he was ever in office at all; 4th, no credit having been entered for the $700,

which was paid before the execution was issued, was evidence of an intention to perpetrate a fraud upon other creditors.

But no levy was in fact made ; the attempted levy was a mere contingent or conditional levy. A levy to be effectual, must be certain — positive — absolute.

Such a levy cannot be sustained as against other execution creditors, according to the case of *Minor* v. *Herriford et al.*, 25 Ill. 346, which is sustained in *Brown* v. *Cook*, 9 Johns. 361 ; *Cornell* v. *Cook*, 7 Cowan, 310 ; *Corlies* v. *Stanbridge*, 5 Rawle, 286 ; *Commonwealth* v. *Strauback*, 3 Rawle, 341; *Hotchkiss* v. *McVicker*, 12 Johns. 403.

If there ever was a levy at all, it had become *dormant* before the sheriff made his levies, by reason of the delay on the part of the plaintiffs in the execution in the marshal's hands. *Ross* v. *Webber*, 26 Ill. 223; 1 Vern. 245; 6 Hill, 232; 2 T. R. 596 ; *Russell* v. *Gibbs*, 5 Cowen, 391 ; *Butler* v. *Maynard*, 11 Wend. 552.

No notice whatever was given to the sheriff, at any time, of a levy having been previously made. *Shirley* v. *Phillips et al.*, 17 Ill. 471 ; *Martin* v. *Dryden*, 1 Gilm. 217 ; *Burnell* v. *Robertson*, 5 Gilm. 289 ; *Carter* v. *Willard*, 19 Pick. 1 ; *Shumway* v. *Ritter*, 7 Pick. 56.

To maintain trover, the officer must have actual possession, and have taken an inventory. *Loyd v. Wyckoff*, 6 Halst. 218 ; *Kellogg* v. *Griffin*, 17 Johns. 276.

MESSRS. E. S. SMITH, and E. A. STORRS, for the plaintiff in error, in reply.

The authorities cited by the defendants in error are not in point.

In *Knower* v. *Barnard*, 5 Hill, 377, the property levied upon was left in the possession of the defendant, and the sheriff was directed by the plaintiff's attorney not to sell on the execution. In *Kimball* v. *Munger*, 2 Hill, 364, the plaintiff directed the sheriff not to proceed to sell unless forced to do so. *Benjamin* v. *Smith*, 4 Wend. 336, is an authority against the defendants in error, for in that case the court say,

" The mere delay of the officer, without countenance or direction from the plaintiff in the execution, will not render the execution dormant." In *Hickock* v. *Coates*, 2 Wend. 419, the plaintiff in the execution ordered the officer to suspend further proceedings till he gave further directions. In *Kellogg* v. *Griffin*, 14 Johns. 573, the plaintiff's attorney gave instructions to the sheriff to make a levy, but to do nothing until ordered. In *Minor* v. *Herriford*, 25 Ill. 346, this court simply hold, that in order to make a levy, the sheriff must so deal with the property, as without the protection of the writ his acts would make him a trespasser ; and *Ross* v. *Weber*, 26 Ill. 223, is directly against the defendants in error, for this court there held, that without an agreement for delay, or instructions to that effect, the execution will not, by reason of the delay, be rendered dormant.

That there were no agreements, instructions or directions for delay in this case, is affirmatively shown.

Mr. JUSTICE BREESE delivered the opinion of the Court.

In an action of trover and conversion, as in an action of ejectment, the plaintiff must recover on the strength of his own title, without regard to the weakness of that of his adversary. Like that, this is a possessory action, and the plaintiff must show he has either a special or a general property in the thing converted, and the right to its possession.

This right, the plaintiff in this action claims he had, by virtue of a certain writ of *fieri facias* which he had duly levied on the property. He claims by force of the levy, and if the levy he sets up was a valid one, he may have established his right.

The courts of Great Britain, and of this country, have entertained different notions as to what is necessary to constitute a valid levy of an execution. We do not deem it necessary to state these points of difference, or go into an examination of the subject *in extenso*, inasmuch as this court has declared what shall be a valid levy.

In the case of *Minor* v. *Herriford et al.*, 25 Ill. 348, it was

held, to constitute a valid levy, the property must be within the power and control of the officer when it is made, and he must take it into his possession in a reasonable time thereafter, and in such an open, public and unequivocal manner, as to apprise everybody that it has been taken in execution. He must so deal with the property, in order to constitute a good levy, as, without the protection of the execution, his acts would make him a trespasser. This has been followed by the case of *Havely* v. *Lowry*, 30 Ill. 446.

Again, in the case of *Douglas et al.* v. *Whitney*, 28 Ill. 366, this court intimated that a levy should be indorsed on the *fi. fa.*, and be distinct and specific.

We believe all courts hold a levy should be indorsed on the *fi. fa.*, and that the property should be in the view and under the control of the officer at the time he makes it, and he should, in a reasonable time after the levy is made, take possession of the property.

This is to prevent frauds, and to require that the *indicium* of ownership shall be where the title is. If property levied upon, was not taken into the possession of the officer in a reasonable time after the levy, or the levy should not be open and notorious, means would be afforded the defendant to obtain credit on the faith of the property in his possession, of which he is, to all appearance, the real owner. There is a species of personal property, of which, at the time of a levy, actual possession cannot be taken, as a growing crop. In such a case, it would be prudential in the officer to call some one or more of the neighborhood, to witness he had taken it in execution, and he should indorse the fact on the writ. The purchaser of such a chattel, would have the right to enter upon the premises and gather the crop. Most kinds of personal property can be easily handled, and moved from place to place, whilst others are ponderous, and their removal attended with expense and trouble. This may be predicated of the lumber in controversy, and which might justify an officer making a levy upon it, to suffer it to remain where he found it. But he should exercise some act over it, as would make him, without the protection of the writ, a trespasser.

Some public, open, unequivocal act should be done that would lead all persons to know the law claimed control over it, and that the property was no longer in the custody of the former owner, but in that of the law.

To establish a levy on this lumber, the owner, Gibson, and his employee, Randall, were examined. Gibson states he was called on by Matthews, who had the execution against him — a paper, which he said was an execution — that he demanded payment, and he, Gibson, turned out the lumber to him on it. Matthews placed it in Randall's care as custodian. He designated and separated the lumber levied on from other lumber in the yard. He said he was deputy marshal under Davidson; he levied on about one hundred thousand feet of lumber, including shingles and lath. The marshal separated and marked out the lumber in the yard from the other lumber, and advertised for sale afterwards; does not know what became of the deputy marshal who made the levy, and cannot say he saw the marshal or deputy on the day he was to sell. On his cross-examination, he said, when the marshal levied, he asked witness who was a proper person to put in charge of the lumber, and he recommended Randall. Randall was in his employ. The lumber was turned out to him, and he levied on it. Matthews placed the lumber in Randall's charge, and told him to take charge of it; after that, witness had no charge of the lumber, and never sold any of this* lumber after that, nor any knowledge of any of it being sold by Randall or anybody; does not know that the proceeds of the lumber came into his store; kept no lumber account; all his accounts were kept together. The lumber was on the south side of the plank road when the marshal levied on it; had three or four hundred thousand feet in the yard at the time.

Randall states that he knows Matthews; that he came to Arlington on the 18th of November, 1857; he had some papers in his hands, and said he was H. M. Matthews, and was Deputy United States Marshal, and had made a levy on some lumber in Gibson's lumber yard belonging to Gibson, and wished witness to take charge of the lumber for him;

was introduced to the marshal by Gibson; the marshal made a division of the lumber yard. There was a certain telegraph pole in the yard; the lumber that lay east between this pole and the plank road, was the lumber levied on. The lumber west of this pole he did not levy on, and witness was to sell it as usual. The marshal was to go to Chicago, and there write witness what arrangement was to be made with regard to the lumber he had levied upon; if he did not write and let witness know what arrangement was made, then witness was to go on and sell the lumber as he had been doing. He did not write; got no word from him; went on and sold part of the lumber as witness had been doing. In April, 1858, witness removed this lumber to make room for a load that had arrived by the cars for one McCrady, about 80,000 feet of which was sold to Gibson; they went on and retailed the Mc-Crady lumber to different persons, until the sheriff came and levied upon all the lumber remaining in the yard, including the lumber levied on by the marshal. After that there was no more lumber sold until the sheriff sold it. He further says, it was part of the arrangement made with the marshal, as he sold lumber he was to pay it (the proceeds) over to Gibson; that he had sold about 30,000 feet, and had paid the money over to Gibson. On his cross-examination, he says, he waited three or four months to hear from the marshal before he sold any of the lumber. The marshal said if he did or did not write, he could not say which, witness was to sell the lumber, but was to pay the money to Gibson; he said the money might go to pay the judgment execution. He forgets whether the marshal told him to sell if he did or did not write. He accounted for what he sold, and Gibson paid him until first of April, 1858. He obeyed the marshal as he understood him. There was no inventory of the lumber taken by the marshal or by witness, and none directed to be taken.

This is the substance of all the testimony going to prove a levy, and it falls far short of the requirements necessary to make a valid levy. Admitting the person having the papers was an officer, and one of them was an execution, of neither

of which is there any proof, there is no proof of an actual levy. So far as the debtor himself is concerned, the levy may be good, but we are trying the question with reference to the rights of third persons, in view of the rule established by this court in *Minor v. Herriford,* before cited. The lumber was in view of the officer, though there is no proof he looked at it, and being out in the open yard, was under his power and control for the moment, but he did no act, and made no declaration, by which other interested parties or the public, might know he had seized the lumber on an execution. On the contrary, three witnesses residing within a few rods of the lumber yard, state that they never heard of the levy by the marshal, and that Gibson, during and up to the time of the levy by the defendant Waldron, was in the possession of the lumber and engaged in selling it as usual at retail. The division of the lumber, by the telegraph pole and plank road, was a mere mental act of the parties. There was no actual division or separation of one portion of the lumber from another, or any public declaration, that all the lumber east of a certain telegraph pole and between it and the plank road was taken in execution. The officer, if he was one, did no act towards the lumber that would make him a trespasser if he had no writ. This is an essential criterion of a levy, as we have said. Nor did the officer indorse any levy on the execution in its lifetime. It appears, that after the expiration of the term of office of the marshal, and eleven months and twenty-one days after the alleged levy, that officer returned the execution with this indorsement : " This writ came to hand November 13, 1857, at 12 o'clock, M. James W. Davidson, by H. M. Matthews. This execution is returned by order of plaintiff's attorney, being heretofore levied on 175,000 feet of lumber at Arlington, in the Northern District of Illinois, also on (a certain tract of land, describing it, turned out by James C. Gibson as his property), all of which was afterwards, to wit, on the 6th day of September, 1858, advertised by me for sale, but there was no sale of either the said lumber or land, because prior to the day of sale the said lumber had been sold or disposed of by said Gibson, or by some other person, and

by an examination of the records, etc., it appears that Gibson had no title to the land above described. This execution is therefore returned by order of plaintiff's attorney, without sale, and unsatisfied, November 3, 1858. James W. Davidson, *late* U. S. Marshal Northern District Illinois."

It does not appear in what character the person receiving the execution, acted. No official character is affixed to the name of either Davidson or Matthews, at the time the writ came to hand, nor is there any proof that either of them was, in fact, or had ever acted, the one as marshal, and the other as his deputy. The statement of the levy is too indefinite and uncertain, to give the marshal a right of possession or property in the lumber. It does not show when it was levied, whether in the lifetime of the *fi. fa.*, or after it had expired, nor upon what lumber, or kind, or description, so that others interested might be notified of a change of possession by means of a levy. For all that appears, "heretofore levied" may mean that it was levied on after the life of the execution. There is nothing definite or certain about it — nothing to notify other parties of the fact, that the lumber was in the custody of the law by a regular and valid levy, and Gibson testifies there was only about one hundred thousand feet levied on, including shingles and laths. We infer from the testimony of Randall, that the only "separation and marking out" the lumber levied on from the other lumber in the yard, was that spoken of by Randall, which was the appropriation of all the lumber east of a certain telegraph pole, and between that and the plank road, to the execution, and which was afterwards removed to make way for the McCrady lumber. Here was no displacing of the piles of lumber, no change made in its position, no mark put upon it to show that it was in the custody of the law, and no act done by which, without the writ of execution, the officer could be made a trespasser.

In addition to all this, the lumber was left in the possession of an employee of the defendant, who was instructed, on a certain contingency, to go on and sell it as usual, and pay over the proceeds to the defendant in the execution, which he did do. These facts, if the levy was a valid one, furnish strong ground

for the belief, taken in connection with the fact that a payment of seven hundred dollars made by the defendant, was not indorsed on the execution, that the levy was colorable only, and made to shield the property from the claims of other parties, or to create a lien separate from the possession, neither of which the law will indorse. *Laws* v. *Worthington*, 4 Penn. State R. 155. But if the levy was valid, permitting the property to remain for months in the possession of the defendant, or of Randall who was in the defendant's employment, selling from it as usual, and paying over the proceeds to the defendant, was fraudulent, as against third persons having demands against the defendant, and made the execution under which the levy was made dormant, and therefore constructively fraudulent as to them. The rule is well settled, if a creditor seize the goods of a debtor under an execution and suffers them to remain in the possession of the debtor, the execution is deemed fraudulent and void as against a subsequent execution. *Storm* v. *Woods*, 11 Johns. 110.

It is admitted the consent of the creditor must be shown. It must be shown that the creditor actually so instructed the officer, or that the facts and circumstances are such as to justify the inference that such instructions were given—that the delay was with the knowledge and assent of the creditor. The fact that the plaintiffs were proceeding on an execution to collect seven hundred dollars more than was due upon it — the presumption that the marshal informed the plaintiff's attorney at Chicago of the arrangement made with Randall about the disposal of the lumber, and no countermand by him, warrants the inference that all the acts done in reference to this lumber were done with the knowledge and approbation of the counsel for the plaintiff, and for the purpose of protecting the property from the claims of other creditors. This being so, the execution was fraudulent as against such persons.

But waiving all this, as not being properly in the case, the question is not, whether the plaintiffs in the execution have lost their lien on this lumber by the delay, but it is, has the marshal lost the benefits of the levy by reason of his delay?

There is no attempt to throw a loss on the plaintiffs in the execution held by the marshal, but the loss is thrown on the officer, who is the party in fault for the delay in levying and selling. If the attempt here, was to throw the loss on those plaintiffs, then they might well say that they did not authorize the delay. The marshal is the meritorious party in this action, and he alone can be made to suffer by his own negligence. The plaintiffs in the execution held by him, have their remedy against him.

But it is urged by the plaintiff, that the validity of this levy cannot be inquired into by this court, as the *fi. fa.* under which it was made, was issued by a court of a different jurisdiction, and much labor and learning have been exhibited in the argument on this point. We have looked into all the cases cited by the counsel, and must say, they do not touch such a case as this. Here a remedy is sought by an individual, not as an officer of the United States, in a court of the State in a matter over which the State court has unquestioned jurisdiction, namely, an ordinary action of trover. The plaintiff, to sustain his claim, has to give some evidence of his right, and whatever be the character of that evidence, like everything else in the case, it becomes subject to the scrutiny of the court trying the cause.

The court which issued the execution under which this levy was claimed to have been made, was a court of the United States, but the officer is suing in a State court, as an individual, and he must show that court that the writ under which he justifies or claims property, was properly issued by that court, and that he made a valid levy under it. It would be strange, indeed, if such questions could not be heard, and decided by the State court, without the hazard of a clashing of jurisdictions, or the charge of usurpation of power. The books abound with cases of this kind, where justification is claimed for acts done under process issuing from different jurisdictions, and the validity of such process examined and adjudged.

Suppose a party, suing in a State court in an action of ejectment, claiming title by virtue of a sale of the premises

under an execution issued out of the District or Circuit Court of the United States, is not the validity of this execution and of the proceedings under it, a fair subject of investigation and adjudication by the State court? Is the writ, because issued by a court of the United States, invulnerable to any attack in a State court, when it is there offered as evidence? What law or principle of justice, bestows upon such process, such immunity? Is not the claimant bound to show the execution valid, and the proceedings under it legal, if either is attacked? The answer must be in the affirmative. Is the principle different, when personal property is the subject of the action?

We are inclined to think, this is the first time such an objection has been made; It certainly has no merit or force in it.

The judgment must be affirmed. *Judgment affirmed.*