# SIMEON B. CHITTENDEN *et al.*

## *v.*

## THOMAS S. ROGERS *et al*

1. LEVY *upon personal property — what constitutes.* It is not a sufficient levy of an execution on personal property, for the officer to indorse an inventory of the property on the execution in the presence of the judgment debtor, but the officer must perform some act which not only indicates an intention to seize the property, but he must reduce it to possession, or at least bring it within his immediate control. A mere "pen and ink" levy will not be sufficient. He must do some act which, if not protected by his writ, would make him a trespasser.

2. SAME — *levy upon property in possession of the "custodian," in the city of Chicago.* Where personal property has been seized under process, in the city of Chicago, and placed in the hands of the "custodian" provided by the act of 1861, it is in the actual possession of the custodian, and that of the officer making the levy becomes constructive only, so that when another execution comes to the hands of the latter, to be levied on the same property, it is not enough that he makes a mere memorandum of the property, it not being present, with intent to attach it to the execution, but he should go to the custodian and there, in sight of the property, make the levy and indorse it on the writ, and notify the custodian of his act.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

A statement of the case will be found in the opinion of the court.

Mr. E. S. SMITH, for the plaintiffs in error.

Messrs. WALKER & DEXTER, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The principal facts in this case are identical with those in the preceding chancery cause between the same parties, so far as the judgments, executions and sales under them are concerned.

When the bill in chancery was dismissed for want of equity, " the plaintiffs in error in their three cases joined in a motion for an order requiring the clerk of the court below to make out a list of all the judgments rendered against the defendants therein at the term of the court, to which the writ of attachment was issued and made returnable, in cause No. 20,879, wherein Simeon B. Chittenden *et al.* are plaintiffs, and Thomas Rogers *et al.* are defendants, and of all the judgments rendered in attachment suits, made returnable to the same term, and deliver the same to the sheriff holding the proceeds of sale of the property attached in said cause No. 20,879; and that said sheriff be thereupon required to pay out of said proceeds the damages, interest and costs, recovered by the plaintiffs against said defendants in said cause, No. 20,879, and that he also pay out of said proceeds the judgment rendered against the defendants in said attachment suit, No. 20,906, wherein William Huested *et al.* are plaintiffs, and Thomas S. Rogers *et al.* are defendants; and that he also pay out of said proceeds, the judgment rendered against the defendants in said attachment suit, No. 20,964, wherein Joseph Wild is plaintiff, and Thomas S. Rogers *et al.* are defendants; *provided*, that said proceeds amount to a sum sufficient to fully pay and satisfy said above

mentioned judgments, and in case they do not, he pay said judgments, *pro rata.*"

This motion the court denied, and adjudged the costs against the plaintiffs in error. To reverse this judgment this writ of error is prosecuted to this court, and several reasons assigned why the court should have allowed the motion.

We propose to examine the fourth only, as the disposal of that decides the case. It is as follows :

" Because the executions issued upon said pretended judgments were not in fact levied, and, therefore, did not become liens upon the property attached."

Under the act regulating the custody and sale of personal property under legal process, in the city of Chicago, in force February 22, 1861, p. 76, Laws of 1861, the custodian was required to receive, make and keep a public register of all personal property which should be seized or held under legal process in the city, and make all sales of such property. He was required to keep a store-house in the city for the safe-keeping of this property, and to keep a record of it, which should contain a schedule of all property he received, the names of plaintiff and defendant, and their attorneys, if any, from what officer received, and the amount of debt, damages and costs, in items ; also the docket number of process, if from a court of record, etc., which record was to be open to public inspection ; and the custodian was required to deliver to the officers delivering property a receipt for the same, particularly describing it. He was required to make all sales of personal property under process at public auction, and sell to the highest bidder, and the proceeds paid over to the officer or party entitled to them. The custodian had a specific and paramount lien on all property coming into his possession for all expenses incurred, advances made, fees, etc. It was also made the duty of all officers having in their possession personal property held under legal process, immediately to deliver the same to this custodian, and all personal property taken by any legal process, after the passage of the act, should be put in the

possession of the custodian at the time of making the levy or attachment, in default of which, the officer to be liable, etc. The custodian not to be liable to an action of replevin, but the same to be brought against the officer.

By this act, property, after its delivery to the custodian, is in his actual possession. That of the sheriff or officer making the levy becomes constructive, only. To make the levy of the executions which issued on the judgments confessed by Rogers and McCormick, in favor of Lambert and the others, the sheriff should have complied with this statute, and made a levy on the property so in the actual possession of the custodian, and this, in the life-time of the executions, so that subsequent and other creditors might ascertain, from the record required to be kept by the custodian, if the property was under levy, and under what executions.

The executions on these judgments confessed were issued on the thirty-first of July, 1861, and if then a lien on the property theretofore attached by Chittenden's writ of attachment, and then in the hands of the custodian, it is insisted such lien was not perfected in the life-time of those writs, it being established by the testimony that the sheriff or one of his deputies notified the custodian, verbally, on the 26th of November, 1861, he had executions on these judgments. The only evidence of a levy of these executions is found in the first affidavit of T. M. Bradley, a deputy sheriff, and in the affidavits of Walker and Dexter, the attorneys who had them issued, and of Lumbard, the deputy. Bradley states that the writ of attachment in favor of Chittenden and Co. came into the sheriff's hands, July 23, 1861, and was levied on the same day on the property in question. That, on the 31st of July, 1861, the executions on these confessed judgments of Lambert and the others came into the sheriff's hands. That said executions, *as appears by the indorsements thereon*, now in his possession, were levied on the same goods that Chittenden's attachment was levied upon, August 2, 1861, and he makes an exhibit of these several indorsements of levy, dated, respectively, August 1, 1861, and July 31, 1861.

Mr. Walker states, in his affidavit, that he directed Lumbard to levy the executions on the day they were issued, upon the property then in the hands of the sheriff or his custodian, which had been taken under Chittenden's attachment, which Lumbard said he would do. The only other direction Mr. Walker ever gave him about the executions was, to proceed under them and sell the property levied upon. This was about the time the property was advertised for sale. At that time, Walker states, the levy had not been indorsed on the executions at length, but a memorandum was made on them, or on some papers attached to them, which Lumbard said was the memorandum of the levy made at the time he received the executions.

Mr. Dexter, another of the attorneys for Lambert, and the other plaintiffs in the confessed judgments, in his affidavit, states, that, in the morning of the day after the executions were issued, he met Lumbard, the deputy sheriff, who told him that the executions were in his hands, and that he told the deputy to levy them upon this property attached. He met this deputy two or three days afterward, and he told him he had levied the executions as directed by Mr. Walker and himself. He never at any time gave the deputy any different instructions, nor ever requested him to hold on and not to levy.

Mr. Hessing, the sheriff, to his answer in the chancery cause, attached the affidavit of Lumbard, which states, that he is a deputy of A. C. Hessing, of Cook county, Ill., and has been so a year. That he has heard read the affidavits of J. M. Walker and Wirt Dexter, filed in these cases, and that the facts therein stated are true. That on the day of the date of said four executions, or soon thereafter, and on the date mentioned in the memorandum of levy, attached to said executions respectively, the same and each of them came into his hands for service, and he was directed by said Walker & Dexter to levy the same upon a stock of carpets and other personal property, then in the possession of the sheriff of Cook county (the property attached in the Chittenden attachment suit). That on same day said executions came into his hands he levied the same on said property, and made a memorandum of said levy, and of

the property so levied upon, on a separate paper, for the purpose of attaching the same to said executions. That said memorandum was not attached to said executions until about the time Walker & Dexter directed sale of said property to be made under said executions (or about the middle of November.) That the reason why said memorandum was not indorsed on said executions was, that he was informed by Dexter that there might be other property to levy upon.

This is all the testimony the record in both cases affords of any levy of the executions on the confessed judgments. The affidavit of Lumbard was attached to the sheriff's answer in the chancery suit as an exhibit, and was not evidence on this motion, if objected to. But it fails to prove any levy, nothing but a mere memorandum, and which Mr. Walker says was not indorsed on the executions until about the time of the sale, which was December 6, 1861.

This court has decided that it is not a sufficient levy of an execution on personal property, for the officer to indorse an inventory of the property on the execution, in the presence of the judgment debtor, but the officer must perform some act which not only indicates an intention to seize the property, but he must reduce it to possession, or at least bring it within his immediate control. That a mere "pen and ink" levy will not be sufficient. *Havely* v. *Lowry*, 30 Ill. 446; *Davidson* v. *Waldron*, 31 id. 121. He must do some act, which, if not protected by his writ, would make him a trespasser. *Minor* v. *Herriford*, 25 id. 344.

This property was in the possession of the custodian when these executions issued, and the officer holding them should have gone to the custodian, and there, in sight of the property, made a levy and indorsed it on the writs, and notified the custodian of his act. It is no excuse to say the property was then in the custody of the law. It was not in such custody by these writs for their benefit, and could only be so by a formal levy, made in their life-time, and entered on the executions This would indicate that the officer had taken possession of the

property; had so interfered with it, that, without the protection of the writ, he would be a trespasser.

Conceding, then, all that is stated in the affidavits of Walker and Dexter, and of Frank Lumbard, the deputy, and in the other affidavits filed for defendants, and disregarding those of McKinnon and the others for plaintiffs, it is manifest no levy was made on this property during the life-time of the executions on the confessed judgments, and they, thereby, lost their lien, and consequently, cannot be allowed to cut out the executions in the attachment causes.

We are, therefore, of opinion that the attaching creditors are entitled to the proceeds of this property to the extent of their several amounts, the judgment of Chittenden, by the agreement of the parties, to be paid in full, with interest, and those of Huested, Carll and Wild, *pro rata.*

The judgment of the court below denying the motion of plaintiffs is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*