### Karen E. Larsen v. Joseph B. Ditto and Charles Norton.

1. PRACTICE—*Oral Testimony Incompetent to Prove One a De Jure Officer.*—Oral testimony is incompetent to prove that a person is a *de jure* officer.

2. JUDGMENTS—*Erroneous as to One Defendant, Erroneous as to All.*—A judgment is a unit, and if erroneous as to one of the defendants it is so as to all.

3. EXECUTIONS—*What is Not a Sufficient Levy.*—It is not a sufficient levy of an execution on personal property for the officer to indorse an

inventory of the property on the execution, in the presence of the judgment debtor; the officer must perform some act which not only indicates an intention to seize the property, but he must reduce it to possession, or at least bring it within his immediate control. A mere pen and ink levy will not be sufficient. He must do some act which, if not protected by his writ, would make him a trespasser.

4. SAME—*Where Goods Sold Have Been Seized on Other Executions.*— If the goods or chattels sold on execution have been attached by another creditor or seized on another execution, either by the same or any other officer, or if before the payment of the residue, after the satisfaction of such execution, to the debtor, another writ of attachment or execution against him is delivered to the officer who made the sale, the proceeds of the sale are to be applied to the discharge of the several judgments in the order in which the respective writs of attachment or executions become a lien or are entitled by law to share, and the residue, if any, is to be returned to the debtor or his assigns.

5. HUSBAND AND WIFE—*Conveyance of Goods Between.*—In the case of a conveyance of goods and chattels between husband and wife living together, no change of possession is necessary, record notice of the change of ownership being substituted for change of possession.

Replevin.—Error to the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed July 16, 1900.

Statement.—Plaintiff in error sued the defendants in error, Joseph B. Ditto, E. W. Braden and Charles Norton, in replevin, for certain goods and chattels. The goods were replevied and delivered to the plaintiff. Such proceedings were had that the jury found for the defendants, Ditto and Norton, and against the defendant Braden, and the court rendered judgment in favor of Ditto and Norton for their costs and for a return to them of the property replevied and in favor of the plaintiff as against defendant Braden for her costs. Each of the defendants pleaded *non cepit*, *non detinet*, and a special plea justifying the taking as a constable under the writ of attachment against Charles Larsen.

The goods replevied consisted of fixtures, paints, oils, etc., situated in a store on Milwaukee avenue, in the city of Chicago. October 6, 1897, the sheriff of Cook county had levied on the fixtures and stock an execution issued on a judgment in favor of the Enterprise Paint Company and

against Charles Larsen, the husband of plaintiff, who, at
the time of the levy, was the owner of the goods, and the
sheriff was in possession of the goods by virtue of the levy.
Charles Larsen and the plaintiff, his wife, lived together at
number 354 West Ohio street, in the city of Chicago.
October 6, 1897, Charles Larsen executed to the plaintiff a
bill of sale of the goods and chattels in the store. The bill
of sale was acknowledged as provided by the statute, was
delivered by Charles Larsen to plaintiff's attorney for her,
and was recorded in the office of the recorder of deeds of
Cook county, at 10 o'clock A. M., October 6, 1897. The
value of the goods and chattels was about $1,200. The
consideration for the bill of sale was money, the separate
property of the plaintiff, largely in excess of $1,200, which
she had previously loaned to Charles Larsen. After the
execution of the bill of sale, and about 8 o'clock A. M.,
plaintiff went to the store where the goods and chattels
were, for the purpose of taking possession. She found
there Mr. Goodwin, the sheriff's custodian, and Mr. Offen-
berg, her husband's clerk, and informed them of the execu-
tion to her of the bill of sale. She remained in the store
until about noon of that day. Joseph B. Ditto, who claimed
to be a constable, had in his hands a writ of attachment,
issued in a suit against Charles Larsen, and, October 6, 1897,
he went to the store and says he levied the writ on the
property, subject to the previous levy made by the sheriff,
and put a custodian, one Underwood, in possession. He
says he thinks the time of his alleged levy was before 10
o'clock A. M., but that he could not tell the time of day
within a half hour, nor could he tell the day except by his
return on the writ. He testified that, at the time he levied,
he saw Mrs. Larsen and Offenberg at the store, and Offen-
berg testified that the time was 10:20 o'clock A. M.; that he
looked at his watch and called Mrs. Larsen's attention to
the time. Charles Norton, a constable, had in his hands
another writ of attachment against Charles Larsen. About
10 o'clock A. M., October 6, 1897, he went to the store and
found it closed by the sheriff, and he could not get in. He

then went to Charles W. Peters, a deputy sheriff, and gave him a copy of the writ and $1.10, after which he returned to the store, but could not get inside of it.    He says he saw the stock through the window, but did not get possession of it.    It appears from the evidence that plaintiff purchased the judgment of the Enterprise Paint Company against her husband; that the judgment was assigned to her, and that, October 9, 1897, the sheriff, by direction of the company's attorney, released the levy of the execution issued on that judgment.

SMOOT & EYER, attorneys for plaintiff in error.

BUCKLEY, GRAY & MORE, attorneys for defendants in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Ditto, over the objection of plaintiff's attorney, was permitted by the court to testify that he was a constable.    The question whether he was a constable was directly in issue by the pleadings.    This being the case, it was incumbent on him to prove that he was a *de jure* officer, and his oral testimony was incompetent for that purpose.    Case v. Hall, 21 Ill. 632;  Outhouse v. Allen, 72 Ib. 529;  Vaughn v. Owens, 21 Ill. App. 249;  Home Ins. Co. v. Tierney, 47 Ib. 600.

Ditto pleaded *non cepit, non detinet,* and a special plea justifying the taking of the property, as a constable, under the writ.    The evidence shows that he took the property, and not having proved that he was an officer *de jure,* he failed on his special plea.    The finding of the jury in his favor, therefore, was clearly erroneous, and so also was the judgment in his favor for his costs, and for a return of the property to him and Norton.    The judgment is a unit, and being erroneous as to one of the defendants is so as to all. Street R. R. Co. v. Morrison, 160 Ill. 288, 295;  Sup. Lodge K. of H. v. Goldberger, 175 Ib. 19.

We are of opinion that defendant Norton's act in the premises did not constitute a valid levy. It appears by his own testimony that he merely looked through the window of the store; that the sheriff was then in possession; that he, Norton, could not get in, and that he went to a deputy of the sheriff and gave him $1.10 and a copy of the writ of attachment. He says he then returned to the store, saw the stock through the window and indorsed a levy on the writ. The attachment writ was put in evidence and a return is indorsed of date October 7, 1897, in substance, that Norton levied, subject to the levy of the sheriff, on the entire stock contained in store 907 Milwaukee avenue, by reading the writ to Peters, handing him a copy of same, and tendering to him $1.10, and by reading the writ to Charles Larsen.

In Chittenden v. Rogers, 42 Ill. 100, 105, it is said:

" It is not a sufficient levy of an execution on personal property for the officer to indorse an inventory of the property on the execution, in the presence of the judgment debtor, but the officer must perform some act, which not only indicates an intention to seize the property, but he must reduce it to possession or at least bring it within his immediate control. A mere pen and ink levy will not be sufficient. Havely v. Lowry, 30 Ill. 446; Davidson v. Waldron, 31 Id. 121. He must do some act which, if not protected by his writ, would make him a trespasser. Minor v. Herriford, 25 Id. 344."

In the case cited the property was in the possession of a custodian by virtue of a writ of attachment levied by the sheriff, and the question was whether there were valid levies of certain executions on the property while it was in the possession of the custodian. It appears that all the officer who held the execution did, was to make a memorandum of the alleged levies on separate pieces of paper, which were intended to be subsequently attached to the executions. The court say:

" The property was in the possession of the custodian when these executions were issued, and the officer holding them should have gone to the custodian and then, in sight of the property, made a levy and indorsed it on the writs,

and notified the custodian of his act.    It is no excuse to say the property was then in the custody of the law.    It was not in such custody by these writs, for their benefit, and could only be so by a formal levy made in their lifetime and entered on the executions.    This would indicate that the officer had taken possession of the property, and had so interfered with it that, without the protection of the writ, he would be a trespasser."    Ib. 105–106.

In the present case it does not appear that Norton notified the custodian, the sheriff, or any person, that he had made a levy.    He testified that he gave Peters, a deputy sheriff, who had nothing to do with the levy of the execution by virtue of which the sheriff, by his custodian, was in possession of the property, a copy of the writ, but it does not appear that he gave to Peters a copy of his indorsement of levy, or that he informed him that he had made a levy. Neither the sheriff nor the sheriff's custodian could have been in possession for the plaintiff in the attachment writ which Norton held, because neither of them knew of the alleged levy.    Norton had no control of the goods; neither had any person for him.

Counsel for Norton rely on the decision in White v. Culter, 12 Ill. App. 38.    In that case there was a levy of a writ of attachment on personal property in the possession of the sheriff's custodian, by virtue of the levy of an execution. The court sustained the levy of the writ of attachment.    It is said in the opinion, " In this case the constable indorsed a levy upon his writ, notified the sheriff's custodian, and appointed him also as his custodian."    The notification and appointment mentioned are facts distinguishing the case cited from the present case.    Counsel, in support of the alleged levy of Norton, also rely on section 51 of chapter 77 of the Revised Statutes, which is as follows:

" If the goods or chattels sold on execution have been attached by another creditor or seized on another execution, either by the same or any other officer, or if before the payment of the residue, after the satisfaction of such execution to the debtor, another writ of attachment or execution against him is delivered to the officer who made the sale, the proceeds of the sale shall be applied to the

discharge of the several judgments in the order in which the respective writs or attachments or executions become a lien or are entitled by law to share, and the residue, if any, shall be returned to the debtor or his assigns."

The section recognizes that an execution or writ of attachment may be levied on goods and chattels in the possession of an officer by virtue of a prior execution, but does not prescribe how such levy shall be made. The section relates only to goods and chattels which have been sold on execution, and the distribution of the proceeds of the sale.

The court gave to the jury the following instruction:

"The court instructs the jury that the transactions between husband and wife should be closely scrutinized, and before the plaintiff is entitled to recover in this case as against the attaching creditors of Charles Larsen, who have sustained their attachments, the plaintiff must have proved by a preponderance of the evidence that she not only paid a good and valuable consideration for such stock of goods, but that the purchase by the plaintiff from her husband was made in good faith and without any intent on her part to hinder or delay the creditors of her said husband, and further, that she obtained possession of said stock of goods under said bill of sale and was in possession at the time the writ of attachment held by the defendant, and which were afterward sustained, were levied."

Counsel for Norton contend that in the case of a sale of goods and chattels by a husband to his wife, or *vice versa*, while they are living together, no change of possession is necessary, citing Rev. Stat., Chap. 68, Sec. 9, and Hughes v. Bell, 62 Ill. App. 74. Section 9 is as follows:

"A married woman may own, in her own right, real and personal property obtained by descent, gift or purchase, and manage, sell and convey the same to the same extent and in the same manner that the husband can property belonging to him; provided, that where husband and wife shall be living together, no transfer or conveyance of goods and chattels between such husband and wife shall be valid as against the rights and interests of any third person, unless such transfer or conveyance be in writing, and be acknowledged and recorded in the same manner as chattel mortgages are required to be acknowledged and recorded by the laws of this State, in cases where the possession of the property is to remain with the mortgagor."

Larsen v. Ditto.

The question is, whether this section dispenses with the delivery or change of possession, on a sale by the wife to the husband, or *vice versa*, when they are living together; whether the requirement that the conveyance shall be in writing and shall be acknowledged and recorded in the same manner as chattel mortgages is intended as a substitute for a change of possession from vendor to vendee. In passing on this question, the object of the statute, the subject-matter of section 9, its language and requirements, are to be considered.

The last clause of section 9 relates to conveyances of goods and chattels between husband and wife who are living together. When husband and wife are living together, such change or transfer of possession of goods and chattels as would operate as notice to third persons of a change of ownership, is, with few exceptions, practically impossible. The language of the statute is:

"No transfer or conveyance of goods and chattels, between husband and wife, shall be valid as against the rights and interests of any third person, unless such transfer or conveyance be in writing, and be acknowledged and recorded in the same manner as chattel mortgages," etc.

We think the fair, if not necessary implication from this language is, that if the conveyance is in writing and acknowledged and recorded as provided by the section, it is valid as against the rights and interests of third persons.

Section 1 of chapter 95 of the Revised Statutes is as follows:

"Be it enacted by the people of the State of Illinois, represented in the General Assembly, that no mortgage, trust deed or other conveyance of personal property having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed; and every such instrument shall, for the purposes of this act, be deemed a chattel mortgage."

There is no provision in the chattel mortgage act affirm-

atively declaring that if the instrument provides for the possession of the property to remain with the grantor, and is acknowledged and recorded as directed, the conveyance shall be valid as against the rights and interests of any third person; yet the uniform construction is, that if these things are done, the instrument will be valid against such rights and interests. The reference in section 9 to the chattel mortgage act, of itself indicates that the intention of the legislature was to substitute notice by the record of a written instrument acknowledged as prescribed by the section, in lieu of an actual change of possession which operates as notice. A sale of goods and chattels between strangers may be made by mere oral agreement, and to be valid as against the rights and interests of third persons, there must be a change of possession from the vendor to the vendee, which will operate as notice to third persons of the change of ownership. If it was the intention of the legislature that there should be such change in the case of conveyances between husband and wife living together, why the requirement that the conveyance should be in writing, and should be acknowledged and recorded? If it was the intention that notice of change of ownership should be given by actual and apparent change of possession, why the additional requirement that constructive notice should be given by the record? We can conceive of no good reason. But if it was the intention to dispense with actual and apparent change of possession, then the requirement that there shall be record notice is not only reasonable, but is necessary for the protection of the rights and interests of third persons. Our conclusion is that in the case of a conveyance of goods and chattels between husband and wife living together, no change of possession is necessary; that by section 9 quoted, *supra*, record notice of the change of ownership is substituted for change of possession. Hughes v. Bell, 62 Ill. App. 74.

In the present case the residence of the plaintiff and her husband is about a mile distant from the store in which the goods and chattels in question were, and in which plaintiff's

husband formerly conducted his business, and it may be said that an actual and apparent change of possession was practicable and should have been made. The answer is obvious. By the statute the substitution of record notice for notice by a change of possession is made to depend solely on the living together of husband and wife at the time of the execution of the conveyance, and not at all on the nature or *situs* of the goods and chattels conveyed. The statute contains no exception based on the nature or *situs* of the property, and the court is powerless to make one. The instruction is erroneous, in holding that proof by the plaintiff that she obtained possession of the stock of goods is essential to a recovery. The instruction is also obnoxious to criticism in other particulars not pointed out or relied on by plaintiff's counsel.

The judgment will be reversed and the cause remanded for further proceedings in accordance with this opinion, plaintiff in error to recover her costs of this court as against defendants in error, Ditto and Norton.

Reversed and remanded.