## James Logsdon

### v.

## Thomas J. Spivey, Administrator *de bonis non* of Henry McKernan, deceased.

1. Levy *upon personal property—whether valid.* To constitute a valid levy of an execution, upon personal property, the property must, at the time of the levy, be in the control of the officer, and he must, within a reasonable time, take it into his possession, unless the debtor shall tender a delivery bond; he must so deal with the property that, without the protection of the writ, he would be a trespasser. This is the rule as between successive levies under different executions in favor of several creditors, or where the debtor sells the property after a levy has been endorsed.

2. But as between the officer and the debtor, or the personal representatives of the latter, it is not essential to the validity of the levy, that the property should be taken possession of by the former. If, after endorsing the levy, the officer should leave the property with the debtor, it would be, like a defectively executed chattel mortgage, binding between the parties, but void as to creditors and purchasers.

3. Same—*of a levy after the death of the debtor.* Where an execution comes to the hands of the officer in the lifetime of the debtor, it becomes thereby a lien upon the personal property of the latter, subject to execution, and though the debtor should die before any further steps have been taken, the officer may proceed to make the levy, and it will be binding upon his representatives, and his creditors, if he have any.

4. Lien *of levy on personal property—its duration.* The levy of an execution upon personal property does not cease to bind the property at the end of ten days after the return day, but the officer may proceed to sell under the levy after that time, without regard to what has become of the writ.

5. And the rule in that regard is the same whether the levy was made by a sheriff, who could be compelled to make the sale, by writ of *venditioni exponas*, or by a constable, under a judgment rendered by a justice of the peace, who has no power to issue such a writ.

Appeal from the Circuit Court of Gallatin county; the Hon. Andrew D. Duff, Judge, presiding.

The opinion states the case.

Mr. WILLIAM G. BOWMAN and Mr. CHARLES BURNETT, for the appellant.

Mr. MILTON BARTLEY and Mr. T. B. TANNER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass *de bonis asportatis,* brought by Lydia McKernan, as administratrix of H. McKernan, deceased, in the Gallatin circuit court, against James Logsdon. The declaration counts for five hundred bushels of corn taken from the administratrix with force and arms, by appellant. A plea of not guilty was filed and issue joined. The suit was subsequently revived in the name of Thomas J. Spivey, who had become administrator *de bonis non* of the estate of H. McKernan, deceased. At the May term, 1869, of the circuit court, a trial was had before the court and a jury, resulting in a verdict and judgment for the sum of $200 and costs, from which an appeal is prosecuted, to this court.

It appears that appellant, with others, some time in the month of May, 1864, went to the house of the widow of deceased and removed four large wagon loads of corn, in all, perhaps, about two hundred bushels, which had been cultivated on appellant's farm, by deceased, and which appellant claimed the right to distrain and hold for rent due him for the ground cultivated by deceased.

It also appears that Ridgway had two executions against deceased, which were levied upon the same corn, after the death of McKernan, but under which no sale was ever made. The corn was in a pen when the levy was made, and no actual possession was taken, by removing it or placing it in the possession of a custodian. The constable who had made the levy afterwards received a bond from appellant for the delivery of the corn, and authorized him to take it, which he did, and for which this suit was brought. Appellant also claimed that

McKernan delivered him the corn before his death, for rent, which, together with the levy under the executions, he relied upon as a defense.

The court below, among others, gave these instructions:

" 4.   And the court further instructs the jury, that, if you believe from the evidence, that Owens, as constable, by virtue of an execution issued twenty-fifth of January, 1864, levied on the corn in controversy as the property of the estate, or property of Henry McKernan, such levy ceased to be a lien on said corn ten days after the expiration of the seventy days from the date of the issue of said execution, and that Owens, after such expiration of time, lost his right further to hold the corn, unless proceedings under the execution were suspended by an injunction or supersedeas issued from the higher court.

" 5.   And the court further instructs you, that, if you believe, from the evidence, that Owens, as constable, levied on the corn in dispute, and did not remove it, but left it in the possession of the plaintiff, and never sold it on execution, and that he had ceased to lawfully hold said corn before Logsdon took the corn, then, unless Logsdon has proven a right to the possession of the corn by a preponderance of the evidence, you should find for the plaintiff."

Do these instructions contain correct legal propositions? As between creditors, or between a creditor and a purchaser, after a levy, it has been the uniform rule of this court in holding that, to constitute a valid levy on personal property, it must be, at the time the levy is made, in the control of the officer, and he must, within a reasonable time thereafter, take the property into his possession, unless the debtor shall tender a delivery bond; that he must so deal with the property that he would, without the protection of the writ, be a trespasser. This is the rule as between successive levies under different executions in favor of several creditors, or where the debtor sells

the property after a levy has been endorsed. *Minor* v. *Herriford*, 25 Ill. 344 ; *Havely* v. *Lowry*, 30 Ill. 446 ; *Davidson* v. *Waldron*, 31 Ill. 120. But in this case it is not a conflict between executions or creditors, but simply between the creditors and the representative of the deceased debtor. The question arises whether, in such a case, the same, or a different rule, must be applied.

It is a familiar rule, that, as between the vendor and vendee, a delivery of personal property is not necessary to vest the title in the purchaser. In such a case, it is only necessary that nothing more remains to be done to complete the sale, and is so regarded by the parties ; but a different rule obtains as to creditors and subsequent *bona fide* purchasers of such property. To render the sale valid and effectual, as to creditors and subsequent purchasers, or incumbrancers, there must be an actual delivery to the purchaser, if capable of delivery, and if not, then a symbolical delivery. As to creditors and purchasers, the policy of the law requires the ownership and possession to be united. But, as between the vendor and vendee, it is immaterial. So, in reference to a levy on property, as between the officer and the debtor, it does not matter whether the officer takes and removes the property, but as to a subsequent creditor or purchaser, it is indispensable that the officer should reduce it to such possession as it is capable of receiving, or place it in charge of a custodian within a reasonable time.

If the officer makes a levy, and then constitutes the debtor a custodian, the debtor, or those claiming under him, will not be heard to say the levy was invalid because the officer failed to remove the property and deprive the debtor of its custody. In such a case it is like a defectively executed chattel mortgage, which is binding between the parties, but is void as to creditors and purchasers. Although the constable in this case failed to reduce the crib of corn to actual possession, by removal or by placing it in the care of a custodian, the debtor could not deny that it was a valid levy, nor can his representative take it with a better title than he held. If, then, appellant received the

property from the constable by virtue of the levy, he could justify under the levy, and as the bailee of the constable, if the executions remained unsatisfied. If, however, the levy was excessive, the constable would be liable for the excess, unless it should be sold for no more than the debt and costs, or trover would no doubt lie against the bailee for the excess over and above enough to satisfy the executions.

Was the levy of these executions, in the hands of the officer at and before the death of the debtor, and which were in full force, after the debtor's death, binding upon the representatives, and creditors, if there are any, of McKernan? Such a levy was held to be valid in the case of *Dodge* v. *Mack*, 22 Ill. 93. That decision was reached upon a mature consideration of the authorities, and we are still satisfied with the conclusion there announced, and must hold that it governs this question.

The first of these instructions declares, as a principle, that, if a legal and valid levy were made, it would cease ten days after the return day of the execution. When property is seized and held by an officer under an execution, it is then in the custody of the law, and is, *sub modo*, a satisfaction of the judgment. But, when property is thus seized, it becomes the duty of the officer, without unreasonable delay, to sell so much as may be necessary to pay and discharge the execution, and an unreasonable delay in making a sale would, no doubt, render him liable for all injury occasioned thereby; but if he still retained the property it would not release it from the levy. Having seized the property under competent authority, and the property having thus been placed in the custody of the law, and having thus been appropriated to the payment of the debt named in the execution, it still remains in the custody of the law, and liable to be sold to satisfy the debt, although the execution may have died before a sale is made.

We do not see, from the statute, or the common law, that the levy should cease to bind the property at the end of ten days after the return day. The statute has not so declared, but has only provided that if the constable shall fail to make

return of the execution within that time, he shall be liable to an action. It by no means follows, that, because the constable has so acted as to render himself liable to the plaintiff, for that reason the levy is gone, and that he must surrender the property to the defendant.

Under the common law, when a sheriff has levied an execution on personal property, and, for any reason, fails to sell during the lifetime of the writ, he may retain the property and sell it to satisfy the debt, and failing to do so, the plaintiff in execution may sue out a *venditioni exponas*, to compel the officer to make sale of the property. But it is not held that such a writ confers any power upon the officer, but only compels him to do what the law required him to do without a writ. A constable having seized property under an execution, is required to proceed to sell it to satisfy the debt, without regard to what becomes of the writ. In this respect, he occupies the same position and is invested with the same powers as is a sheriff similarly situated. Nor does it matter that a justice of the peace has no power to issue a writ of *venditioni exponas*, execution being an entire thing, which, when commenced, should be completed by the officer who commenced its execution.

From what we have said, it will be seen that both of these instructions are erroneous, and should not have been given, and as they were calculated to mislead the jury, the judgment must be reversed and the cause remanded.

*Judgment reversed.*