AARON FELTENSTEIN *et al.*

*v.*

SIDNEY STEIN, Assignee.

*Filed at Ottawa April 1, 1895—Rehearing denied October 11, 1895.*

1. INSOLVENCY—*assignment deed delivered before judgment, holds property.* An assignee for creditors, under deed delivered twelve minutes before the entry of judgment against the assignor, the keys of the store containing the property being at once delivered to such assignee, who takes actual possession and records his deed of assignment within a few hours, acquires a right superior to the judgment creditor.

2. SAME—*delivery of keys good as a symbolical delivery.* Delivery of the keys of a store containing goods assigned for creditors is a good symbolical delivery of possession,—especially when followed by actual possession, taken within a reasonable time.

3. SAME—*recording assignment—actual possession by assignee sufficient.* The recording of a deed of assignment is not essential to vest the assignee with title as against creditors, where the assignee has taken actual possession before levy of execution or attachment.

4. SAME—*assignment not void because it delays creditors.* An assignment for creditors, general in its character and fair on its face, is not fraudulent and void from the mere fact that it delays particular creditors.

5. SAME—*fraudulent transfers before assignment do not affect the latter.* Fraudulent transfers of property made by a debtor just previous to a general assignment do not avoid such assignment, but are themselves avoidable under it.

*Feltenstein* v. *Stein*, 51 Ill. App. 426, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. FRANK SCALES, Judge, presiding.

The appellants filed a petition in the county court of Cook county on June 6, 1893, alleging that, on the day before, towit: June 5, 1893, they recovered five judgments, aggregating more than $20,000.00, against one Weissenbach in the circuit court of Cook county; that, at the hour of half-past two on the morning of said June

5, 1893, executions issued upon said judgments, and were at said hour of 2:30 A. M. on said June 5, 1893, delivered to the sheriff of said county with directions to levy the same upon the property of the insolvent; that said Weissenbach, the insolvent, was then possessed of stocks of goods, wares and merchandise located at Nos. 228-230 Milwaukee avenue and Nos. 709-711 South Halsted street in the city of Chicago in said county; that said executions were then and there at said hour of 2:30 A. M. June 5, 1893, liens upon said property; that, for the purpose of satisfying said liens, petitioners, with one Stevens, chief deputy of said sheriff, proceeded to said store on Milwaukee avenue to take possession of the same, and were there advised by one John S. McConnell and his attorney, that the insolvent had made an assignment to said McConnell; that they demanded of said McConnell to deliver the possession of said property to the sheriff, but he refused to do so; that said deed of assignment was not, at the time said liens were acquired, filed or recorded in the recorder's office of said county, or in the county court of said county; that said McConnell, as assignee, was not in possession of said property at the time said executions came to the hands of the sheriff; that said assignment, if any was made, is subject to the rights of the petitioners under said executions and fraudulent and void as against them; and that petitioners are entitled to have the sheriff take possession of said property and sell it under said executions.    The prayer of the petition is, that McConnell be directed to turn over all the property in said premises 228-230 Milwaukee avenue, "now in his possession as such assignee," to the sheriff to be by him sold to satisfy said executions, and the balance to be disposed of as the court may direct; that McConnell be enjoined from interfering with the same; and for other and further relief.

McConnell answered the petition and resigned on June 7, 1893; and the county court appointed the appel-

lee, Stein, as assignee in his place.    Stein filed a supplemental answer.    The answers deny the validity of the judgments and executions, or that the latter became liens, and aver, that the assignment was executed, acknowledged and delivered to the assignee and accepted by him before 2:30 A. M. on the morning of June 5, 1893, and that the stock in the store on Milwaukee avenue was delivered to said assignee before said hour, and that he took possession thereof in the manner and under the circumstances stated in the opinion, and kept such possession and handed it over to his successor.

Replication was filed to the answers, and, upon the issue thereby made, a hearing was had before the county court, a large mass of testimony being introduced by the petitioners, and none by the respondents.    The county court dismissed the petition, and such order of dismissal has been affirmed by the Appellate Court.    The present appeal is prosecuted from said judgment of the Appellate Court.

MOSES, PAM & KENNEDY, for appellants:

The paper title of the assignee, and a key or keys to the store "on Milwaukee avenue," without even knowing the exact locality, cannot override the lien of the executions created by the statute.    *Lowe* v. *Matson*, 140 Ill. 108.

Ever since the case of *Thornton* v. *Davenport*, 1 Scam. 296, it has been the law of this State that an absolute bill of sale of personal property, where the possession remains with the vendor, is void as to creditors and purchasers, though authorized by the terms of the bill of sale.

In *Hall* v. *Parsons*, 17 Vt. 271, it was held that the same change of possession required in the case of the sale of personal property is required where property is assigned for the benefit of creditors.    *Rice* v. *Curtis*, 32 Vt. 460.

A constructive or symbolical delivery may only be allowed in a case where actual delivery is physically

impracticable    *Gardner* v. *Howland*, 2 Pick. 599 ; *Lanfear* v. *Sumner*, 17 Mass. 117.

For an excellent case where symbolical delivery was held not to change possession, see *Bullis* v. *Montgomery*, 50 N. Y. 352.

Under the law as it now stands in the State of Illinois, the only means to test the want of good faith of an assignment is in the county court, and it was so held in *Farwell* v. *Crandall*, 120 Ill. 70.

G. W. NORTHRUP, Jr., and S. O. LEVINSON, for assignee:

The assignee took possession at the moment the deed was delivered to him, by receiving the keys of the store, and this possession is sufficient as against the pretended liens of these alleged executions. Burrill on Assignments, (5th ed.) chap. 30, par. 1; id. sec. 279, p. 421; *Packard* v. *Dusmore*, 11 Cush. 282; Ross on Vendors, (1st ed.) 11, 55; 2 Kent's Com. (12th ed.) 500; *Wilkes* v. *Ferris*, 5 Johns. 335; *Sharp* v. *Carroll*, 66 Wis. 62.

Delivery of the key of a shop is a good delivery of the shop. *Vining* v. *Gilbreth*, 39 Me. 496; *Cooper* v. *Burr*, 45 Barb. 9; *Marsh* v. *Fuller*, 18 N. H. 360; *Harman* v. *Anderson*, 2 Camp. 243; *Ingraham* v. *Wheeler*, 6 Conn. 277; *Hollingsworth* v. *Napier*, 3 Caines, 182.

The title of the assignee to the property in question vested on the execution, acknowledgment and delivery of the deed of assignment to the assignee, irrespective of the question of delivery of possession, so as to cut out all liens accruing subsequently in point of time.    Burrill on Assignments, sec. 296; *Lowe* v. *Matson*, 140 Ill. 108; *Johnson* v. *Sharp*, 31 Ohio St. 611; *Vredenberg* v. *White*, 1 Johns. 157; *Goodwin* v. *Kerr*, 80 Mo 281.

That the question of recording is not important is shown by the case of *Myer* v. *Fales' Sons & Co.* 12 Ill. App. 351.

The assignee had a reasonable time after the delivery of the deed of assignment to him to take possession of the personal property. *Lowe* v. *Matson*, 140 Ill. 108; *McIntosh* v. *Corner*, 33 Md. 605; *Ingraham* v. *Wheeler*, 6 Conn. 277; *Mitchell* v. *Willock*, 2 W. & S. 253; *Read* v. *Eames*, 19 Ill. 594; *Arnold* v. *Stork*, 81 id. 410; *Ogarra* v. *Lowry*, 5 Mont. 427; *Kleinschmidt* v. *McAndrews*, 117 U. S. 292.

If the intention of Weissenbach was by this assignment to defeat these executions, such intention was not only not a defect in the assignment, but, on the contrary, was most praiseworthy. Burrill on Assignments, sec. 328; *Reed* v. *McIntyre*, 98 U. S. 510; *Hoffman* v. *Mackall*, 64 Am. Dec. 637; *Wellis* v. *March*, 30 N. Y. 349; *Pike* v. *Bacon*, 38 Am. Dec. 263; *Hanselt* v. *Vilmar*, 2 Abb. Pr. 252.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a contest between appellants claiming to be judgment creditors of one Weissenbach, an insolvent debtor, and appellee as assignee under a general assignment for the benefit of creditors, made by said debtor. The question is, whether the judgments are entitled to liens upon the debtor's property superior to the rights of the assignee, or whether the latter took the property free of any liens, created by said judgments.

The facts in relation to the entry of the judgments are as follows: During Saturday, June 3, 1893, and until late in the afternoon of that day, appellants and Weissenbach had been in conference in relation to the indebtedness of the latter to the former, and he had executed to them judgment notes. One of these notes for $5000.00 was without valid consideration, and was finally withdrawn without the entry of judgment thereon. On Sunday, June 4, 1893, and in the early part of Sunday evening, Weissenbach was in consultation with some of his friends and creditors with a view of raising money, so that he could continue his business, which was conducted at two

stores, one on Milwaukee avenue and one on Halsted street in Chicago, at each of which places he had a stock of goods and merchandise. The negotiations fell through.

One of the attorneys of appellants, and one or more of his clerks, and one or more of the appellants, were in the office of said attorneys before and after midnight on Sunday, June 4, 1893. There, the declarations and *cognovits* were prepared for entering judgments on the judgment notes. Stevens, a deputy sheriff, had been found at 11 o'clock in the evening, and, at 12:30 A. M. on June 5, 1893, he and said attorney, and a brother of the attorney, went to the Brevoort House in Chicago, and there the attorney awakened from his sleep a judge of the circuit court of Cook county, who had retired to his bed. The *narrs.* and *cognovits* in six cases were then and there presented to said judge, and he signed his name to an endorsement upon the papers in each case in the words and figures following: "Enter judgment herein for........dollars." In the meantime, one of appellants and a clerk of said attorney had taken a carriage and gone after one of the deputies of the clerk of the circuit court. The deputy clerk arrived at the court house at about 8 or 10 minutes before 2 o'clock on the morning of Monday, June 5, 1893, and lighted the gas, and placed some of the books within reach. About 2, or a few minutes thereafter, the attorney came in with the papers containing the judge's endorsement, and with executions already prepared, except the signatures and numbers. The deputy clerk marked the papers filed as of June 5, 1893; wrote the general numbers of the cases in the execution docket, but nothing else, not the title of the cases, nor the amounts of the judgments; put the general, execution and fee-book numbers on the executions and signed and sealed them; and then went with said attorney to the waiting place of the deputy sheriff in the neighborhood of the court house, and there delivered the executions to him. The judgments were not written up upon the judg-

ment record at that time, nor until after 8 o'clock in the forenoon of that day. The deputy sheriff returned to the sheriff's office in the court house and stamped the first of the executions as having been received at 2:30 A. M. on June 5, 1893, and each of the others as received one moment later than the preceding one.

The facts in regard to the execution of the assignment are as follows : Weissenbach feeling uneasy about the judgment notes he had signed, and fearing that some advantage had been taken of him, particularly as one of the notes for $5000.00 represented no actual indebtedness, consulted an attorney on Sunday evening, and went a second time to the house of the latter between 12 and 1 o'clock on the morning of June 5, 1893, in company with a friend named Herman. The three came down to the attorney's office, and, on the way down, Weissenbach told the attorney, that he had on that evening executed a bill of sale of the Halsted street stock to a creditor named Rosenberg, to whom he owed $9000.00. After they reached the attorney's office, about one o'clock, or shortly thereafter, the attorney advised Weissenbach to make a general assignment for the benefit of his creditors, and he reluctantly consented to do so. A deed of assignment was then drawn and signed by Weissenbach ; and the attorney placed his seal upon the blank certificate of acknowledgment. He and Weissenbach and Herman then went to a drug store distant less than a block from the court house, where John S. McConnell was in charge. The matter was explained to McConnell, and he consented to act as assignee. His name was inserted in the deed of assignment, and he signed a written acceptance of the trust, endorsed upon the deed. The deed and acceptance were acknowledged before the attorney as notary, who filled out the certificate to that effect. The deed was then and there formally delivered by Weissenbach, the assignor, to McConnell, the assignee, at the hour of two o'clock and sixteen or seventeen minutes on the morning of June

5, 1893. The evidence is clear and undisputed, that it was not later than 2:18 A. M. At the same time the attorney said to Weissenbach, "Deliver the keys and possession of the store to Mr. McConnell" (meaning the store on Milwaukee avenue). Thereupon Weissenbach delivered the keys of said store to McConnell with the remark : "You now have possession of the store." Weissenbach had locked the store on Saturday evening, and taken the keys with him, and it does not appear that the store was open on Sunday. Weissenbach and his attorney and Herman and McConnell then went to the court house ; and the attorney, seeing a light in the sheriff's office, went in and found Stevens placing his stamp upon the last one of the executions, and asked him if he had executions against Weissenbach, and was told by the deputy sheriff that the executions had been delivered to him at 2:30 o'clock, and replied to that statement, that the delivery was twelve minutes too late, as an assignee had been appointed twelve minutes before 2:30 o'clock. The attorney and McConnell and Weissenbach and Herman then jumped into a carriage in front of the court house, and drove to the store on Milwaukee avenue, and there McConnell took possession at once, and posted the following sign on the door: "This store is in possession of John S. McConnell, assignee." The deed of assignment was filed in the recorder's office of Cook county at 6:45 o'clock on the morning of June 5, 1893, and with the clerk of the county court at 8:30 o'clock on that morning.

When the deputy sheriff was told that an assignment had been made before the delivery of the executions to him, he at once communicated the fact to the attorney of appellants, and told the latter that he could not make a. levy if an assignee had been appointed, as he had received no indemnifying bond. But the deputy sheriff and said attorney and one of appellants went at once to the Halsted street store to make a levy, and found it in

the possession of Rosenberg, and then to the store on Milwaukee avenue, and found McConnell in possession there.

Upon these facts, it is strenuously insisted by counsel for appellee, that the judgments and executions were void and subject to collateral attack, upon the ground that no judgment or order or entry was made upon any record of the court until long after the executions were in fact issued, and that the mere endorsement by the judge upon the *cognovit* of a direction to the clerk to enter judgment, made out of court and away from the court house in the dead of night, could not support an execution. Without passing any opinion upon this point, we deem its consideration unnecessary to a disposition of this case. If it be conceded that the judgments and executions are valid, the rights of the assignee are superior to those of the judgment creditors in view of the circumstances already detailed.

It is proven beyond dispute by the testimony introduced by the appellants themselves, that, before the executions came to the hands of the sheriff, the assignment was executed and delivered to the assignee, and the trust therein reposed was accepted by him, and the keys of the store, in which the goods were contained, were handed to him, accompanied by the declaration of the assignor that the possession thereof was thereby given to him; and these acts were followed almost immediately by the actual possession of the assignee, and in a few hours by the recording of the assignment. The fact, that the delivery of the executions to the sheriff took place during the brief space between the execution, delivery and acceptance of the assignment and the symbolical delivery of the goods on the one hand, and the taking of actual possession of the goods and filing the instrument for record on the other, is not sufficient to postpone the rights of the assignee to the liens of the executions.

*First*, there was here a symbolical delivery of the possession of the goods by the assignor to the assignee, when the former handed to the latter the keys of the store in which the goods were stored.    In *Logsdon* v. *Spivey*, 54 Ill. 104, in speaking of sales of personal property, we said :  "To render the sale valid and effectual as to creditors and subsequent purchasers, there must be an actual delivery to the purchaser, if capable of delivery, and if not, then a symbolical delivery."    Such a symbolical delivery of personal property is allowed in many cases where an actual delivery is physically impracticable.    Among the acts most clearly expressive of such a delivery is that of delivering the keys of the store or premises containing the goods assigned.    (Burrill on Assignments—6 ed.—secs. 252, 340 ; 21 Am. & Eng. Ency. of Law, 550, 551).

In *Packard* v. *Dunsmore*, 11 Cush. 282, the debtor sold his bake-house and the stock, material and implements of his bakery to the plaintiff, and made the latter a deed and bill of sale, and took a lease from him, and remained in possession more than a month.    He then went to the office of plaintiff's attorney, distant a quarter of a mile from the bake-house, and there between 12 and 1 o'clock on a certain day surrendered the lease and the key of the bake-house to said attorney, the bake-house being locked at the time, and the same and the personalty therein having been unused for several weeks.    About two hours thereafter, at half after two of the clock on the same day, the defendant as deputy sheriff levied attachment writs upon the personal property.    Two days thereafter plaintiff demanded the possession of the property from the sheriff, but the latter refused to surrender it and sold it at public auction under the writs.    It was there held, that the delivery of the key of the building, under the circumstances of the case, was a sufficient delivery of the personal property within it as against the subsequent attaching creditors.    As, there, the property was

a quarter of a mile distant when the lease was surrendered and the key handed over so that an actual delivery was impracticable, so, in the case at bar, the stock on Milwaukee avenue was distant about a mile when the assignment was executed, delivered and surrendered, and when the key of the store, which had been previously locked and unused since Saturday night, was put into the hands of the assignee, thus rendering it impracticable to make an actual delivery at that time.

In *Wilkes* v. *Ferris*, 5 Johns. 335, there was an assignment for the benefit of creditors containing goods in three stores, and, at the time of executing the assignment, the assignor delivered to the assignee the keys of the stores; and it was held, that there was a sufficient delivery of the goods by the delivery of the keys, as against a subsequent creditor.

To the same effect are the following authorities : *Vining* v. *Gilbreth*, 39 Me. 496; *Sharp* v. *Carroll*, 66 Wis. 62; *Marsh* v. *Fuller*, 18 N. H. 360; *Sullivan* v. *Smith*, 15 Neb. 476.

Symbolical delivery of goods, as by the delivery of the keys to the warehouse where they are stored, will be accepted instead of actual delivery, where the thing does not admit of actual delivery, thus necessitating such a delivery as the nature of the case admits ; or where it is not possible to make an immediate and complete delivery of the thing sold or given. (2 Kent's Com.—12 ed.— marg. page 500; 1 Schouler on Personal Prop. sec. 87).

*Second*, the symbolical delivery of the stock of goods on Milwaukee avenue was followed by an actual possession of the same, taken by the assignee almost immediately, and certainly within a very reasonable time. Within an hour, or less, after the assignee accepted the executed deed of assignment and the keys of the store, he proceeded to the store and took actual possession, and was in such actual possession before the sheriff arrived with the executions to make a levy. Consequently, the facts of the case at bar bring it within the terms of

those authorities, which hold that a symbolical delivery can only be effective when followed immediately by an actual delivery. (*Stevens* v. *Stewart*, 3 Cal. 140; 1 Schouler on Personal Prop. sec. 87; 21 Am. & Eng. Ency. of Law, page 551, and notes).

*Third*, counsel for appellants insist, that the property should be held to be subject to the liens of the executions, because the deed of assignment had not been recorded when the executions were delivered to the sheriff; and the case of *Lowe* v. *Matson*, *supra*, is relied upon as authority for this position. We do not think, that that case will properly bear the construction sought to be placed upon it. It was there said, that the publicity of certain sales or transfers was a circumstance, which would sometimes relieve them of the charge, that they were fraudulent *per se* by reason of the retention of the property by the vendor or owner; and the recording of the assignment was mentioned as showing an intention to give publicity to the transaction. But it was not decided in that case, that the recording of the assignment was necessary to vest the assignee with title as against creditors, where the assignee had taken possession of the property before executions or attachments were levied; otherwise, the following language would not have been used: "Suppose the assignee had taken manual possession of the property, but the sheriff had levied upon it prior to the filing of the deed with the county clerk; would there have been any doubt as to the power of the county court to remove the levies and subject the property to distribution among the general creditors? Certainly not." A majority of this court held in *Farwell* v. *Cohen*, 138 Ill. 216, that the failure of the assignee to record a deed of assignment of personal property when possession is given to the assignee, will not invalidate or defeat the assignment, or deprive the county court of jurisdiction to compel the execution of the trust. The publicity of the transaction is a circumstance in favor of

its good faith, because it operates as notice thereof to parties interested. In the present case, the proof shows that the deputy sheriff, holding the executions of the appellants, and the attorney of appellants, were given actual notice of the execution of the assignment within a few moments after it was made, and after the delivery of the keys of the store had taken place. This notice was more effectual as showing an intention to give publicity to the transaction than the constructive notice arising from the recording of the deed, although such recording was effected at the very earliest moment, towit: at 6:45 A. M. of June 5, 1893.

*Fourth*, complaint is made by the appellants, that they were not allowed to introduce proof as to the bill of sale of the stock on Halsted street, made by the assignor to a creditor named Rosenberg in payment of the latter's debt, for the alleged purpose of showing that the assignment was fraudulent and void as to them. We do not think, that the offered testimony was material under the circumstances of this case; and we are inclined to hold that there was no error in refusing to receive it. The facts, so far as developed by the testimony, are that the assignor made the bill of sale to Rosenberg before he had any idea of making the assignment; that the assignment is general in its terms; that, as soon as the assignee took possession of the store on Milwaukee avenue, his attorney at once went to Halsted street and made demand on Rosenberg for the possession of the stock there; and that such demand on him was the first information, which Rosenberg had, of the making of the assignment.

The Assignment law of this State vests the title to all the debtor's property in the assignee. Where the assignment is general in its character, and fair on its face, as placing all the debtor's property in the hands of the assignee for equal *pro rata* distribution among the creditors, the mere fact, that it delays particular cred-

itors in the enforcement of their claims by the ordinary process of law, does not make it fraudulent and void. Such delay is a necessary incident in the discharge by the assignor of his duty to his creditors. (Burrill on Assignments—6 ed.—sec. 299; *Reed* v. *McIntyre*, 98 U. S. 507; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *Gardner* v. *Com. Nat. Bank*, 95 Ill. 298). Where the assignor has transferred property to third persons before making the assignment, if it is sought to recover back such property, either at law or in equity, resort can be had to the courts having jurisdiction of the proper remedy and competent to afford adequate relief. (*Davis* v. *Chicago Dock Co.* 129 Ill. 180). The *bona fides* of the previous transfer can there be determined. It does not necessarily affect the validity of the assignment. "Where an assignment of the debtor's whole property has been made in good faith for the benefit of all the creditors, its validity will not be impaired by the assignor's withholding a portion of the property actually conveyed; for it has become the property of the assignee, and he can recover it by action." (Burrill on Assignments—6 ed.—sec. 254; *Pike* v. *Bacon*, 21 Me. 280; *Parsell* v. *Patterson*, 47 Mich. 505). If fraudulent transfers of property are made by a debtor just previous to a general assignment, they do not avoid such assignment, but are themselves avoidable under it. (*Batten* v. *Smith*, 62 Wis. 92). A fraudulent conveyance or concealment of any of his property by an assignor prior to the assignment will not impair the validity of a general assignment subsequently made. If such property may not be recovered by the assignee for the benefit of the creditors, any creditor may pursue it as though no assignment had been made. (*Wilson* v. *Berg*, 88 Pa. St. 167).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*